[No. 810.]

## MILES QUILLEN, RESPONDENT, v. G. W. ARNOLD AND LOUIS SULTAN, APPELLANTS.

AMENDMENTS TO PLEADINGS—CHANGE OF PARTIES—RELEASE OF SURETIES.— Where an attachment was issued in a suit commenced by M. Q. and J. D., administrator of the estate of E. D., deceased, against S., and the defendant gave an undertaking to release the attachment, and thereafter the plaintiffs, without the knowledge of the sureties, were allowed to discontinue the suit against J. D., and to continue the suit as M. Q., surviving partner of the late firm of Q. & D.: *Held*, that under the averments in the pleadings as set forth in the opinion of the court, the parties and the cause of action were so changed by the amendments as to release the sureties from all liability on their undertaking. (HAWLEY, C. J., *dissenting*.)

SURVIVING PARTNER—RIGHT OF ACTION.—A surviving partner is entitled to sue in his representative capacity for the amount due the partnership, and in his own name for the amount due to himself individually. The respective demands may be united in the same action, but should be separately stated.

LIABILITY OF SURETIES.—The sureties upon an undertaking for the release of an attachment are only bound to the extent of their obligation; they have the right to stand upon the very terms of their contract, and if it has been changed without their knowledge or consent, they are released from all liability.

AMENDMENT OF PLEADINGS—RIGHTS OF THIRD PARTIES. — Courts have the power, under the provisions of section 68 of the civil practice act, as between the parties to a suit, in furtherance of justice, to amend the pleadings by adding to, or striking out, the names of parties plaintiff or defendant; but this power cannot be exercised so as to change the rights and liabilities of third parties.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

The facts are stated in the opinion.

*Robert M. Clarke*, for Appellant:

I. No judgment could have been recovered upon the original complaint. Neither of the parties plaintiff could maintain the action, nor could they maintain it jointly.

As to that part of the demand, if any, which arose before the death of Edward Donahue, it must be recovered by Quillen as surviving partner for the benefit of the copartnership. (Prob. Act, sec. 200; 1 C. L. 680.)

As to that part which arose after Edward Donahue's death, the estate of Donahue had no interest in it. (*Tompkins* v. *Weeks*, 26 Cal. 50.) No such amendment as was made in this case is legally admissible. (*Little* v. *Virginia & Gold Hill W. Co.*, 9 Nev. 317.) The case after amendment was substantially and materially different from the case before amendment, and by the amendment a recovery was made certain where before none was possible.

II. The amendment operated to discharge the sureties from liability. (Drake on Attach., sec. 325, 325*a*; *Harris* v. *Taylor*, 3 Sneed. 536; *Willis* v. *Crooker*, 1 Pick. 204; *Fairfield* v. *Baldwin*, 12 Pick. 388; *Andre* v. *Fitzhugh*, 18 Mich. 93; *Moulton* v. *Chapin*, 28 Me. 505; *Fullerton* v. *Campbell*, 25 Penn. St. 345.)

*Geo. S. Sawyer*, also for Appellant:

I. Sureties are bound only by the strict letter of their contract, and this must be construed *strictisimie juris* in favor of the sureties, and their liability cannot be changed without their consent either by agreement between the principals or by operation of law. (2 Pars. on Con. 15, sec. 5 *et seq.; Chitty* on Con. 529 *et seq.; Miller* v. *Stewart*, 9 Wheaton, 680–920; 6 U. S. Sup. Ct. Rep. 234 *et seq.; Tarpey* v. *Shillenberger et al.*, 10 Cal. 390; *People* v. *Buster*, 11 Cal. 215: *Bragg* v. *Shain*, 49 Cal. 131; *Milchum* v. *Stanton, et al.*, 49 Cal. 302; *McDonald* v. *Fell et al.*, 49 Cal. 354; 2 Amer. L. Cases, 374 393; *Walsh* v. *Bailie*, 10 John. 180; *Bean* v. *Parker et al.*, 17 Mass. 591; *Wright* v. *Johnson*, 8 Wend. 512; 2 Tillling. & Shear. Pr. 1060; *Potter* v. *Baker et al.*, 4 Paige. Ch. 290; *Shaw* v. *Lawrence*, 14 How. Pr. 94.)

II. A complaint cannot be amended so as to change the parties or change the cause of action either by stipulation of parties or by order of court. (Tillinghast & Shearman's Pr. 1046; 1 Van Sanvoort's Plead. 806; *Davis* v. *Mayor of N. Y.*, 14 N. Y. 506; *Little* v. *G. H. W. Co.*, 9 Nev. 317; *Tormey* v. *Pierce*, 49 Cal. 306.) A plaintiff cannot be created by law where none exists in fact in the action. (4 Nev. 42.)

That there was an entry change of parties plaintiff in which the bond under consideration was given is admitted through the whole course of the proceedings in the case. Else, why should they have sought to. A discontinuance *vacates* all provisional remedies. (See 2 Tillinghast & Shearman's Pr. 335, and cases there cited. A change of capacity is the same as a change of persons. (1 Chitty on Plead. 1419; *Merritt* v. *Seaman*, 2 Selden, 168 and cases cited in opinion; *Wright, receiver*, v. *Joy*, 11 How. 36; *Worden et al., adm'r* v. *Worthington, adm'r*, 2 Barb. 368; *Ogdenburg Bank* v. *Van Rensselaer*, 6 Hill. 240; *Holmes* v. *D'Camp*, 1 John. 33; *Demott* v. *Field*, 7 Cow. 58.)

*Ellis & King*, for Respondent:

The action did not abate, and the property attached would have still been held to secure any judgment, and the under-

taking sued upon, stands exactly in place of the property discharged, and is liable where it would have been liable. The amendment desired by plaintiff having been made by consent, does not dissolve or affect the attachment or its lien. If the undertaking in question could be sued upon in the case at bar, it was certainly competent and admissible testimony, together with the judgment-roll in the action in which the undertaking was given, as tending to prove plaintiff's case.

*Bishop & Sabin and A. B. & W. J. O'Dougherty,* also for Respondent:

I. If the party giving the bond fails to recover judgment, or the same is forfeited by the failure of the party giving the same, to comply with all of its conditions, the liability of the sureties attach at once, and the party for whose protection the bond was given may sue at once. (Drake on Attach., secs. 155–166; *Jones* v. *Childs,* 8 Nev. 121; *Webb* v. *Pond,* 19 Wend. 423; *Chase, Adm'r,* v. *Hinman,* 8 Id. 455; *Rockfeller* v. *Donnelly,* 8 Cow. 639; *Gilbert* v. *Wiman,* 1 Com. 550; *Ball* v. *Gardner,* 21 Wend. 270.)

In this case the plaintiff was one of the original obligees in the bond, and he, succeeding to the interest of all, can sue in his own name to recover the penalty. (*Summers* v. *Farish et al.,* 10 Cal. 347; *Brader* v. *Purkett,* 13 Cal. 588; *Lally* v. *Wise,* 28 Cal. 539.)

II. The bond given to release property attached, stands in lieu of the property that is released, and therefore the defendant in the original suit being liable for judgment, his bondsman having released the property that was held by attachment, the bondsman became liable according to the intent and spirit of the bond, and must pay this judgment. (*Heyneman* v. *Eder et al.,* 17 Cal. 434.)

III. The bond being given to secure the payment of *any* judgment to be rendered in favor of plaintiff, the real party in interest may sue, etc., in his own name. (*Curiac* v. *Packard,* 29 Cal. 199; *Prader* v. *Purkett,* 13 Id. 589; *Taaffe* v. *Rosenthal,* 7 Id. 518; *Baker* v. *Bartol,* 7 Id. 553; *McMillan* v. *Dana,* 18 Id. 339.)

By the Court, BEATTY, J.:

This is a suit upon an undertaking executed by the defendants as sureties in order to procure the discharge of an attachment which had been levied on the goods of John A. Steele, the defendant, in an action entitled as follows: "*Miles Quillen and John Donahue, Administrator of the Estate of Edward Donahue, deceased, plaintiffs;* v. *John A. Steele, defendant.*"

The complaint alleges the pendency of the former action, the levy of the attachment on the goods of Steele, the execution of the undertaking by defendants, the discharge of the attachment in consequence thereof, the recovery of judgment against Steele, the return of execution thereon unsatisfied, demand on the sureties, and their refusal to pay, etc.

The defendants admit the execution of the undertaking; but deny the breach alleged. Their defense is that the parties and the cause of action in the former suit were changed without their consent, and that no judgment was, in fact, ever recovered upon the cause of action stated in the complaint upon which the attachment issued.

The plaintiff having recovered a judgment in the district court, the defendants moved for a new trial upon the ground, among others, that the decision of the court was not sustained by the evidence, in this: "That the evidence shows and proves that there is no judgment on record or otherwise in the action in which the bond sued upon was given." The motion for a new trial was overruled, and the appeal is from that order as well as from the judgment. The question is thus presented for our consideration, whether there was such a change of the parties and of the cause of action in the suit against Steele as to discharge these defendants from liability as sureties on the undertaking given to release his goods from attachment. To determine this question it will be necessary to compare the original complaint, which was on file at the date of the execution of the undertaking, with the amended complaint upon which the judgment was rendered. The first was as follows: "Miles Quillen and

John Donahue, administrator of the estate of Edward Donahue, deceased, the plaintiffs in the above entitled action, complaining of John A. Steele, the defendant in said action, allege: First. That the said plaintiff, John Donahue, is administrator of the estate of Edward Donahue, deceased, late of said Lincoln county, duly appointed, qualified and acting as such administrator; that prior to the death of said Edward Donahue, the said Miles Quillen and Edward Donahue were partners in business at Pioche, in said county, and doing business under the firm name and style of Donahue & Quillen; that since the death of said Edward Donahue, the said plaintiff, Miles Quillen, and the said plaintiff, John Donahue, as such administrator, have and do now continue and carry on the business heretofore carried on by said firm of Donahue & Quillen under said firm name and style at Pioche aforesaid; that between the fifteenth day of August, A. D. 1871, and the third day of December, A.D. 1874, the said defendant became and was indebted to these plaintiffs in the sum of one thousand seven hundred and eighty-three dollars and forty cents, gold coin, and on an account for goods, wares and merchandise, consisting * * * and for money loaned and advanced by plaintiffs to defendant at his special instance and request," etc.

This complaint was filed December 10, 1874, and the following day the defendants herein executed their undertaking, the material portion of which is as follows: "Now, therefore, we, the undersigned, residents, etc., in consideration of the release from attachment of all the property attached, and the discharge of said attachment, do hereby jointly and severally undertake in the said sum of two thousand six hundred and ten dollars and eighty cents, gold coin, and promise that in case the said plaintiffs recover judgment in the said action, the said defendant will, on demand, pay to the said plaintiffs, not exceeding the said sum of two thousand six hundred and ten dollars and eighty cents."

Afterwards, on March 17, 1875, the following stipulation was entered into by the parties to the action, without the knowledge or consent of the sureties: "It is hereby stipu-

lated that the plaintiffs in the above-entitled action have to
and including Thursday, the twenty-seventh day of March,
A.D. 1875, to file an amended complaint in the above-en-
titled action discontinuing as to John L. Donahue, admin-
istrator, etc., and amending in such other respects as the
plaintiff may see fit."

In pursuance of this stipulation, a new complaint was
filed as follows: "Miles Quillen, surviving partner of the
late firm of *Quillen & Donahue*, plaintiffs, v. *John A. Steele*,
defendant.

"And now comes the plaintiff above named, by leave of
court first had and obtained, and files this amended com-
plaint and discontinues as to the said John L. Donahue,
administrator, etc., heretofore joined in this action, and
alleges:

"That, on the tenth day of February, A. D. 1873, and for
more than two years prior thereto, the plaintiff and one Ed-
ward Donahue were partners, doing business as merchants
and traders at Pioche, in said Lincoln county, under the firm
name and style of Quillen & Donahue; that the said Edward
Donahue, one of the partners of said firm, died at Pioche
aforesaid on or about the eleventh day of February, A. D.
1873, leaving this plaintiff the sole survivor of the said
firm of Quillen & Donahue; that, as such surviving partner
of said firm, this plaintiff has had the care, custody and
control of the business of the said late firm, and the assets
thereof, and has, under the said firm name, carried on the
business of said late firm, and is now so conducting the
same and settling up, closing up the business of said late
firm; that, between the first day of August, A. D. 1871, and
the third day of December, A.D. 1874, the said defendant be-
came and was indebted to this plaintiff, as such surviving
partner of said firm, in the sum of eight hundred and five
dollars and ninety cents, in gold coin, for and on account
of goods, wares and merchandise, consisting, etc., by said
late firm and by this plaintiff as such surviving partner
thereof, between said last mentioned dates, sold and deliv-
ered to said defendant at his special instance and request,
at"—etc.

There is a second count for money lent and paid, laid out and expended by the firm, and by the survivor, between the same dates, making the aggregate sum for which judgment is demanded the same as was claimed in the original complaint.

This amended or new complaint was answered by the defendant, and the case was tried and judgment rendered on the issues raised by the amended complaint and answer.

The appellants contend that the cause of action described and set forth in the original complaint was entirely distinct and different from the cause of action upon which the judgment was recovered. They claim that what is called an amended complaint was in reality a complaint in a new suit; that no such amendment would have been possible except for the stipulation of the parties, which they never consented to, and which does not bind them, though it may bind the parties to it. They insist that their undertaking had reference only to the cause of action stated in the original complaint; that they bound themselves only " in case the said plaintiffs recover judgment in the said action," and that they are not bound because one of said plaintiffs has recovered judgment in what is substantially another action.

The respondent, on the other hand, contends that the cause of action stated in the amended complaint was the same as that stated in the original complaint; that the same proof would have supported either, and that the amendments might properly have been allowed, even without the stipulation above quoted.

We have no doubt, looking to the original and amended complaints and the subsequent proceedings in the case, that the pleader who drew the original complaint intended to state the same cause, or rather causes of action, as those upon which judgment was recovered. But we have just as little doubt that he failed to do so. The facts were undoubtedly that the firm of Quillen & Donahue had, during the lifetime of Edward Donahue, sold goods and advanced moneys to and for Steele, and that after the death of Edward Donahue the surviving partner had sold other goods and advanced other moneys to and for Steele. This is sub-

stantially what is averred in the amended complaint, with which we must presume the proofs conformed. The right of action on both demands was in Quillen solely. As surviving partner he was entitled to sue in his own name and in his representative capacity for the amount due the firm, and was at liberty to unite with the firm debt a debt due to himself individually. (27 N. H. 289.) This is what he finally did in the amended complaint, though in a defective way; for he describes himself throughout as surviving partner, and claims to recover only in his representative capacity, whereas he should have stated separately the indebtedness accruing before the dissolution of the firm by the death of Edward Donahue and that accruing afterwards; and claimed the first in his representative and the second in his individual capacity. Defectively as it is drawn, however, it is easy to understand the meaning of the amended complaint and what proof would have been required to support it. But it seems impossible to construe the original complaint to mean the same thing or to be supportable by the same proofs. In fact, it requires a totally different construction, and could only have been supported by the proof of facts utterly variant from those stated in the amended complaint. To prove the case as it sood at the time the undertaking was executed and filed, it must have been shown that after the death of Edward Donahue, John Donahue and Quillen formed a partnership and sold goods and advanced money to Steele, and no proof of the sale of any goods or the advance of any money before the death of Edward Donahue would have been admissible, for nothing of the sort is alleged, and it was a legal impossibility that John Donahue could have any joint interest with Quillen in any demand which accrued during the lifetime of Edward Donahue. Under the new complaint, however, it was admissible to prove an indebtedness accruing to Quillen and Edward Donahue during the lifetime of the latter. Of this there can be no question; a demand could be proved under the new complaint which was in fact and in law entirely distinct from any that could have been proved under the original complaint. This is conceded; but it is contended that the in-

tention of the pleader who drew the original complaint to include the demand accruing to Quillen and Edward Donahue was manifest, and therefore that the amendment subsequently made worked no change in the liability of the sureties. In the light of subsequent disclosures it may appear that the pleader intended to state in the original complaint the same cause of action as that stated in the amended complaint. But the defendants in this action at the time they became sureties for the defendant in that action had not the benefit of the subsequent disclosures to aid them in arriving at the meaning the original complaint may have been intended to express. They read it in its own light as a statement of the facts constituting the cause of action, and not as the statement of an erroneous theory of the legal effect of other facts which were not disclosed. They found it stated that Steele had become indebted to Quillen and John Donahue on account of goods sold and money advanced by them, "these plaintiffs," and they were not bound to infer—they had no reason to infer—that the demand was really for goods sold, not by Quillen and John Donahue after the death of Edward, but for goods sold by Quillen and Edward Donahue during Edward's lifetime. They may have known that John Donahue as administrator had no right and no business to enter into a partnership with the survivor of his intestate, but the fact that he had done so being verified they had a right to believe it. The law might not countenance such a proceeding, but it is well known that many things are actually done that are not strictly according to law. There was no reason, therefore, why the original complaint should not have been construed, according to its plain and obvious import, as the statement of a cause of action existing in favor of Quillen and John Donahue. If so, the liability of these defendants was extinguished by the amendment to the complaint; for there can be no doubt that the judgment against Steele was based, in part at least, upon an account for goods sold and money advanced by Quillen and Edward Donahue, a cause of action which was not only not included in the original complaint, but could not have been united with the cause of action therein stated.

The law does not permit the liability of a surety to be changed without his consent. The general doctrine on this subject is very clearly stated in the opinion of Storey, J., in the case of *Miller* v. *Stewart*, (9 Wheat., 702): "Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. It is not sufficient that he may sustain no injury by a change in the contract, or that it may be even for his benefit. He has a right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, it is fatal." To the same effect are *Myers* v. *Edge*, (7 Term. Rep., 254), and *Walsh et al* v. *Bailie*, (10 Johns., 181). More directly in point is the case of *Bean* v. *Parker*, 17 Mass., 602. That was *scire facias* against the sureties on a bail bond. The defendants pleaded that after entry of the original action in court, there being another action pending in favor of the defendants against the plaintiff, the parties entered into a rule of court whereby they submitted the two actions, and all demands between the parties, to the determination of referees: and that the sum for which judgment was rendered was the sum reported by said referees as the balance of all demands between the parties. To this plea the plaintiff replied that the sum awarded by the referees was part of the same sum demanded in the suit in which the defendants became bail, the referees having only deducted from plaintiff's claim in that suit part of the cross-demand, which could not have been filed in set-off or given in evidence on the trial of the action.

If this replication was true, it showed conclusively that the sureties on the bail bond had been benefited by the reference of all demands between the parties. The judgment against their principal was for a part only of what would otherwise have been recovered. The defendants, by demurring to the replication, confessed that it was true, and the court thereupon decided: "When one becomes bail for another he is responsible only for the demand contained in

the suit upon which the principal has been arrested. Another demand cannot be substituted or added without defeating the contract of bail. It is immaterial whether the substituted demand be greater or less than the one contained in the writ. The bail has a right to say *in haec foedera veni*, and no other.   *   *   *   Nor is it any answer to say that the bail has gained by the agreement to refer, as is alleged in the replication to these pleas, for this will make his contract of bail, which ought to be definite and certain, to depend upon transactions of the parties, in which the bail has no concern, subsequent to his entering into the contract, and put him to the inconvenience of proving facts which may be entirely beyond his reach. When he enters into his contract he pledges himself, on certain contingencies, to pay what may be recovered in the usual course of law in the action to which his bond refers." (See also *Langley* v. *Adams*, 40 Maine, 125; *Hyer et al.* v. *Smith*, 3 Cranch C. C. 437; *Fairfield* v. *Baldwin*, 12 Pick. 388; *Andre* v. *Fitzhugh*, 18 Mich. 93; *Fullerton* v. *Campbell*, 25 Penn. St. 345.) The principle announced in these cases is well settled and is perfectly applicable here.

The cases cited by the respondent are not applicable. No one can deny that a court has the power to amend pleadings by adding or striking out the names of parties, plaintiff or defendant. The power is expressly conferred by section 68 of the practice act. But, although this power may be and is very liberally exercised, and very properly so, as between the parties to the action in furtherance of justice, it cannot be exercised with the effect of changing the rights and liabilities of third parties. No case has been brought to our attention, and we think none can be found, in which sureties have been held liable after a change of the cause of action.

The case of *Lord* v. *Clark* (14 Pick. 223), is relied on as a case in point against our conclusion. In that case, the facts stated in the writ were that Wilson being indebted to Lord, Holbrook and one Richardson, since deceased, partners, promised Lord and Holbrook, the survivors, etc. It was held, and properly held, that striking out the name of

the deceased partner did not release Wilson's bail. The difference between that case and this is that no amendment in that case was actually required in order to support the judgment. The facts were stated correctly, and it appeared on the face of the record that one of the persons named as a plaintiff was dead and, therefore, that his name was merely surplusage.

If, in this case, the facts had been correctly stated—if, instead of averring that Quillen and John Donahue, as partners, had sold goods and advanced money to Steele, it had been shown that the goods were sold and the money advanced by Quillen and Edward Donahue, it would have appeared from the face of the complaint that John Donahue was not a proper party to the action, and his name might have been stricken out without changing the cause of action. The case in 14 Pickering would then have been an authority in respondent's favor.

The other cases referred to are liable to the same criticism. Either they were not actions against sureties, or there had been no change in the cause of action with reference to which they contracted.

The judgment and order appealed from are reversed, and cause remanded.

HAWLEY, C. J., dissenting:

The material questions presented in this case are whether there was such a change of parties by the amendments of the complaint as to introduce any new or different cause of action; whether the testimony offered to sustain the amended complaint could have been introduced to support a judgment under the original complaint.

It is well settled that the liability of a surety cannot be extended beyond the terms of his contract. He is bound only to the extent of his obligation. It is not always essential that he should sustain an injury by the change in the pleadings. He has the undoubted right to stand upon the very terms of his contract, and if without his consent the contract is changed he is released.

The original complaint in the suit against Steele seems to

have been drawn in a very perfunctory manner. If the pleader had given the matter any thought, it is safe to assert that no such pleadings would ever have been filed. The original complaint must be interpreted without reference to subsequent amendments. So interpreted, what is the cause of action?

If the complaint is susceptible of the construction that the indebtedness sued for was due and owing to Miles Quillen and John Donahue, then, of course, it follows that the sureties were released by the amendments subsequently made without their consent.

The averment in the complaint that "said defendant became and was indebted to these plaintiffs," and that a portion of the indebtedness was "for money loaned and advanced by plaintiffs to defendant," tends to support the proposition that the indebtedness sued for, or a part thereof, was due and owing from the defendant Steele to the said Miles Quillen and John Donahue; and, in the absence of other averments, the language used might be conclusive that such was the cause of action. It is, however, the duty of this court to examine all the allegations in the complaint in order to determine the effect and meaning of any particular clause. When so examined, I think it becomes apparent that the indebtedness was not alleged to be due to Miles Quillen and John Donahue in their own right as copartners, but was due to the survivor of the late firm of Quillen & Donahue; that Miles Quillen and Edward Donahue composed that firm, and that John Donahue was made a party to this suit under the erroneous impression of counsel that, in a suit to recover an indebtedness due to a partnership after the death of one of the copartners, it was necessary to make the administrator of such deceased partner a party plaintiff to the action with the surviving partner. It is consistent with all the averments in the complaint, when taken and considered together, to so hold. The substantial facts to be gathered from the averments in the complaint, all of which are more or less imperfect, are that between certain specified dates the defendant became and was indebted to the firm of Quillen & Donahue in the sum of one thousand

seven hundred and eighty-three dollars and forty cents; that Miles Quillen and Edward Donahue composed that firm; that Edward Donahue was dead; that John Donahue had been appointed administrator of his estate, and that the business of the firm had been continued in the firm name. Acting upon these facts, the pleader seemed to think, as a conclusion of law, that owing to the death of Edward Donahue and the appointment of an administrator of his estate, the money became due and owing to the surviving partner and the administrator, and he so averred in his complaint.

Upon the death of one of the copartners it is the duty of the surviving partner to cease the partnership trade or business. If he acts otherwise and continues the business, it will be at his own risk, and he "will be liable, at the option of the representatives of the deceased partner, to account for the profits made thereby, or to be charged with interest upon the deceased partner's share of the surplus, besides bearing all the losses." (Story on Partnership, sec. 343.) But the administrator " of the deceased partner cannot insist upon carrying on the business in partnership with the surviving partner." (Collyer on Partnership, sec. 131.)   If the surviving partner takes the risk and continues the partnership trade or business, he would be entitled, in an action brought to recover the indebtedness due the firm, to include the indebtedness which accrued to him after the death of his copartner. (*Slipper* v. *Stidstone,* 5 T. R. 493; *Davis* v. *Church,* 1 Watts & Serg. 242.)

But such accounts must be separately stated.   In this respect, as well as others, the original complaint was radically defective.

The authorities are numerous and uniform that actions brought to recover the amount due the firm should be in the name of the surviving partner. (Parsons on Partnership, 441-2 *et seq.*; *Murray* v. *Mumford,* 6 Cow. 442; *Evans* v. *Evans,* 9 Paige, 180; *Daby* v. *Ericsson,* 45 N. Y. 786; *Clark* v. *Howe,* 23 Maine, 560; *Barry* v. *Briggs,* 22 Mich. 201; *Allen* v. *Hill,* 16 Cal. 113; *Tompkins* v. *Weeks,* 26 Id. 66; *Gleason* v. *White,* 34 Id. 263; Probate Act, sec. 200, Comp. L. 680.)

The discontinuance of the suit as to John Donahue, administrator, did not, in my opinion, change the parties so as to introduce any new or independent cause of action. The mere fact that a change was made does not necessarily discharge the sureties. The change must, in my judgment, be material. A party plaintiff is authorized to amend his complaint in the particulars allowed by law, and so long as such amendments do not in any respect vary the original cause of action the sureties will still be bound.

The true rule in relation to this subject is clearly announced by Parker, C. J., in *Ball* v. *Claflin,* as follows: "The new count offered under leave to amend must be consistent with the former count or counts, that is, it must be of the like kind of action, subject to the same plea, and such as might originally have been joined with the others. It must be for the same cause of action, that is, the subject-matter of the new count must be the same as of the old; it must not be for an additional claim or demand, but only a variation of the form of demanding the same thing. Amendments made conformably to the rule thus explained can do no injury to any one. Neither the defendant nor his bail, nor subsequent attaching creditors, have ground of complaint, when their liability is in no degree changed or affected, except merely in regard to want of form." (5 Pick. 304.)

But if any material change is made the rule is different. To use the language of the same learned justice: "When one becomes bail for another, he is responsible only for the demand contained in the suit.    *    *    *    Another demand cannot be substituted or added without defeating the contract of bail. It is immaterial whether the substituted demand be greater or less than the one contained in the writ. The bail has a right to say, *in hæc fœdera veni,* and no other." (*Bean* v. *Parker,* 17 Mass. 602.)

It follows from the principles announced in these cases that if Miles Quillen was the only proper party who could maintain the action as set forth in the body of the complaint, the discontinuance as to John Donahue, administrator, would be a mere variation of the form of de-

manding the same thing, and, as such an amendment is clearly authorized by section 68 of the civil practice act, neither the defendant nor his sureties had any ground of complaint. Their liability was not thereby changed in any degree whatever.

The allegations set forth in the amended complaint under which the cause was tried were not, in my opinion, inconsistent with the original declaration. It required the same evidence to maintain the suit as it would to have sustained the original complaint. The form of the action was not changed; the identity of the cause of action was preserved; the amendments were added simply in order to cure the imperfections and mistakes in the manner of stating the plaintiff's case. The real cause of action, from beginning to end, was identical and the same. The various amendments which were allowed did not in any respect tend to change the liability of the sureties upon the undertaking for the release of the attachment, and, in my judgment, did not have the effect to release them from their liability. (*Ball* v. *Claflin, supra; Miller* v. *Clark*, 8 Pick. 411; *Lord* v. *Clark*, 14 Pick. 223; *Smith* v. *Brown*, 14 N. H. 67.)

It is true that the averments in the amended complaint upon which the cause was tried are silent as to what portion of the indebtedness accrued after the death of Edward Donahue, and are in this respect as defective as the averments in the original complaint. The defect in this respect was waived, no demurrer having been interposed upon this ground. The fact is that the indebtedness alleged in the amended complaint is for the same amount and upon the same account, and almost as imperfectly stated as in the original complaint.

The objections to the entitling of the judgment are trivial. The words " surviving partner of the late firm of Quillen & Donahue" were merely *descriptio personæ*. (*Lord* v. *Clark, supra; Clark* v. *Lowe*, 15 Mass. 476; *Winningham* v. *Crouch*, 2 Swan, 170; *Merritt* v. *Seaman*, 2 Seld. 168; *White* v. *Joy*, 11 How. Pr., 36), and certainly were not an essential part of the title of the suit. The capacity in which a person sues must be determined from the allegations in the complaint, and not from the title of the action.

There can be no question as to the identity of the judgment with the suit. The discontinuance of the suit as to the administrator appears in the pleadings, which constitute a part of the judgment-roll. (1 Comp. Laws, 1266.) In fact, it is not pretended that there was any other suit by Quillen against Steele, or that the judgment was rendered in any other action.

I am of the opinion that the judgment of the district court ought to be affirmed.